```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

MILDRED J. RIAS,                )
                                )
        Plaintiff,            )
                                )
    v.                          )    No. 4:07 CV 38 DDN
                                )
SAFECO INSURANCE COMPANY        )
OF AMERICA,                     )
                                )
        Defendant.            )

## MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Safeco Insurance Company of America (Safeco) for partial summary judgment (Doc. 54). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) A hearing was held on January 9, 2009.

## I.  BACKGROUND

Plaintiff Mildred Rias brought this action in the Circuit Court of the City of St. Louis, after her property suffered fire damage.[1] In Count I of her complaint, Rias alleges that Safeco, her insurer, failed to pay the full amount of the loss. (Doc. 1 at 2-5.) In Count II of her complaint, Rias alleges that Safeco failed to pay the full amount of the loss under the Building Ordinance coverage section. (Id. at 5-7.) In Count III of her complaint, Rias includes a claim for vexatious refusal to pay, and for attorney's fees. (Id. at 7-8.)

Safeco removed the action to this court, invoking diversity of citizenship subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441(a). Safeco alleges that it is incorporated in Washington, with its principal place of business in Washington, and that Rias is a Missouri citizen. (Doc. 1 at ¶¶ 1-3.) Safeco further alleges that Rias's claim exceeds $75,000. (Id. at ¶ 4.)

## II.  SUMMARY JUDGMENT

---

[1] The court dismissed plaintiff Bertha L. Brown from this suit for failure to prosecute. (Doc. 45.)

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

### III. STATEMENT OF UNDISPUTED FACTS

The record before the court indicates that the following facts are not disputed. Mildred Rias lived in a four-family flat, with four one-bedroom units, located at 4059-61 Shaw Boulevard, in St. Louis, Missouri. (Doc. 56, Ex. B at 2.) Rias lived on the second floor, in unit 4059A, which was the unit next to 4061A. (Id.) The other two units, 4059 and 4061, were located on the first floor of the property. (Id.) On February 10, 2000, a fire started on the second floor of the property, at 4061A. (Id.)

At the time of the fire, Rias held a fire insurance policy for the property. (Doc. 6 at ¶ 3.) The policy, No. 0Z3094226, was effective from May 2, 1999, to May 2, 2000, and listed the insured as Mildred Rias, Bertha Rias, and Velma Rias, of 4059 Shaw Boulevard. (Doc. 56, Ex. A at 3.) The policy contained the following declarations and coverage limitations:

| COVERAGES FOR THIS LOCATION | LIMITS | DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| A. DWELLING FIRE/EC | $162,000 | $250 | $441.00 |
| SPECIAL | | | $210.00 |
| B. OTHER STRUCTURES FIRE/EC | $16,200 | | INCL |
| SPECIAL | | | |
| C. PERSONAL PROPERTY | DECLINED | | |
| E. ADDL LIVING EXPENSE | $16,200 | | INCL |

**INCLUDED:**
BUILDING ORDINANCE OR LAW COVERAGE                                    INCL

OPTIONS:
H-PREMISES LIABILITY                    $300,000                      $162.00
              (EACH OCCURRENCE)
MEDICAL PAYMENTS (EACH PERSON)  $1,000                                INCL

**DWELLING ANNUAL PREMIUM    $813.00**[2]

(Id.)

The policy also contained certain general exclusions. The exclusion section of the policy stated, in relevant part,

**GENERAL EXCLUSIONS**

We do not cover loss caused by any of the following excluded perils, whether occurring alone or in any sequence with a covered peril:

**1. Ordinance or Law,** meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of property unless specifically provided under this policy.

(Id. at 16.)

Despite this exclusion, the policy contained the following endorsement:

**GOOD NEWS FOR SAFECO POLICYHOLDERS**

---

[2]Before the May 2, 1999 policy period began, Rias received a letter from Safeco, informing her of certain adjustments to the coverage limits. (Id. at 2.) According to the letter, Safeco had increased several of the policy limits. (Id.) These new limits were included in this itemized coverage table. (Id.)

> Your SAFECO dwelling fire insurance policy now provides you with valuable additional protection. Please read the coverage language below and keep this with your policy. It amends your policy and you should be sure you understand the change.
>
> Building Ordinance or Law coverage has been added to your policy. That means if local building code requires an upgrade to damaged property (such as additional insulation, new wiring, etc.) in connection with repairs to your home resulting from an insured loss, the costs for such upgrades are now included in your coverage.
>
> If you have any questions regarding this change, or any other insurance matter, please contact your SAFECO agent.
>
> **OTHER COVERAGE - BUILDING ORDINANCE OR LAW COVERAGE**
>
> Item **1. Ordinance or Law** is deleted from **GENERAL EXCLUSIONS.**
>
> **Building Ordinance or Law Coverage.**
>
> Damage to building, condominium building items, or personal property we cover caused by a Peril Insured Against will be settled on the basis of any ordinance or law that regulates the construction, repair or demolition of this property.
>
> This coverage does not apply:
>
>     **1.**    to loss to any undamaged portion of the building, condominium building items, or personal property we cover;
>
>     **2.**    unless you, and/or your association of property owners if applicable, choose to repair or rebuild your home or condominium unit at its present location.

(Id. at 5.)

On the day of the fire, Rias promptly notified Safeco of the damage, and submitted a claim. (Doc. 6 at ¶ 8). That same day, Safeco inspected the property, and wrote Rias a check, for $16,200, to cover her living expenses. (Doc. 56, Ex. B at 11; Id.) The check represented the complete amount of living expenses covered by the policy. (Doc. 56, Ex. B at 11.) By December 2002, Safeco had also paid Rias the full amount under the Dwelling coverage section - $162,000. (Id. at 12.)

Despite some smoke damage to her unit, Rias continued living on the property after the fire. (Id. at 7.)

On November 27, 2006, Rias filed this lawsuit in the Circuit Court of St. Louis County. (Doc. 1 at 1.) In Count II of her complaint, she alleges Safeco failed to pay the full amount of the loss under the Building Ordinance or Law coverage section. (Id. at 5.) As part of Count II, she seeks to recover an additional $165,795.55 from Safeco – the amount it would cost to repair the damage to the insured property in compliance with the building and housing codes. (Id. at 6; Doc. 1, Ex. 1.)

## IV. DISCUSSION

In its motion for partial summary judgment, Safeco argues that there are no genuine issues of material fact as to Count II. In particular, Safeco argues that the Building Ordinance coverage section is included within the Dwelling coverage section, and is not an independent or separate coverage section. Safeco notes that there is no separate limit listed for the Building Ordinance coverage section, and that the company did not charge a separate premium for this coverage. Since the company has already paid the full policy limit for the Dwelling coverage section, Safeco argues Rias cannot recover any additional amount under Count II of her complaint. (Doc. 55.)

At the hearing, Rias responded by pointing out that there was no monetary amount in the space corresponding to the Building or Ordinance law coverage. Rias argues that the absence of a concrete monetary figure in this space creates an ambiguity. Rias argues that this ambiguity must be interpreted against Safeco, and that Safeco is obligated to pay the amount that is necessary to restore the property to code. Rias also argues that the parties' expectations when entering the insurance contractual relationship is reflected in the argued ambiguity of the policy language that favors her.

**Rules of Decision**

A federal district court sitting in diversity jurisdiction must apply the rules of decision that would be applied by the courts of the

state in which it sits, including the initial choice of the applicable substantive law. <u>Erie R.R. Co. v. Tompkins</u>, 304 U .S. 64, 78 (1938); <u>see also</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).

Missouri choice of law rules follow the "most significant relationship" test, found in Section 188 of the Restatement (Second) of Conflicts of Laws, for claims concerning the breach of insurance policy provisions. <u>Superior Equip. Co. v. Md. Cas. Co.</u>, 986 S.W.2d 477, 480 (Mo. Ct. App. 1998). Under this test, the court balances several factors to determine which state has the most significant relationship to the action. <u>Id.</u> These factors include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. <u>Id.</u> "In cases involving surety or casualty insurance . . . the most important factor is the state which the parties contemplated as the principal location of the insured risk." <u>Id.</u> According to the Restatement, the principal location of the insured risk is the state where the risk will be during the major portion of the insurance period. <u>Id.</u> (citing <u>Restatement (Second) of Conflicts of Laws</u>, Section 193).

In this case, the policy notes that Mildred Rias, one of the named insured, lives in St. Louis, Missouri, the agent is located in Clayton, Missouri, and the insured property is located in St. Louis, Missouri. (Doc. 56, Ex. A at 3.) The policy does not provide for the application of any particular jurisdiction's law, but it does contain a section entitled "SPECIAL PROVISIONS - MISSOURI." (<u>Id.</u> at 6.) The court concludes that the courts of Missouri would apply the law of Missouri in this action.

**Interpreting the Insurance Policy**

Under Missouri law, a court must not alter or construct a new contract through interpretation. <u>Pepsi Midamerica v. Harris</u>, 232 S.W.3d 648, 654-55 (Mo. Ct. App. 2007). A court's duty is limited to the interpretation of the contract. <u>Id.</u> at 655. In interpreting a contract, the court's central obligation is to "ascertain the intention

of the parties and to give effect to that intent." Id. To determine the intent of the parties, the terms of a contract are read as a whole, and given their plain, ordinary, and usual meaning. Id. Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, and not on extrinsic evidence. Armstrong Bus. Servs., Inc. v. H & R Block, 96 S.W.3d 867, 874 (Mo. Ct. App. 2002).

A contract is ambiguous if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain. Id. In other words, a policy is ambiguous when the meaning of the relevant language in the policy is duplicitous, indistinct, or uncertain. Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007). A contractual provision is not ambiguous just because the parties disagree over its meaning, or because the provision or term is undefined. Am. Family Mut. Ins. Co. v. Peck, 169 S.W.3d 563, 567 (Mo. Ct. App. 2005); Armstrong Bus. Servs., 96 S.W.3d at 874. Whether an insurance contract is ambiguous is a question of law, and is determined by examining the specific facts of the case along with the relevant policy provision. Chamness v. Am. Family Mut. Ins. Co., 226 S.W.3d 199, 203-04 (Mo. Ct. App. 2007); Miller v. O'Brien, 168 S.W.3d 109, 115 (Mo. Ct. App. 2005). If the language in an insurance policy is ambiguous, the court construes the language in favor of the insured. Chamness, 226 S.W.3d at 202.

For an additional premium, Safeco offered its insureds several additional coverage provisions. (See Doc. 56, Ex. A at 20-29.) One of these additional coverage provisions, "Option A," provided a home replacement guarantee. (Id. at 20.) This option in the policy provided, in relevant part,

**OPTIONAL COVERAGES**

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING OPTIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

**OPTION A - HOME REPLACEMENT GUARANTEE**

For <u>an additional premium</u>, item 5.c. under **General Conditions**, shall not apply to **Coverage A - Dwelling**. In its place, the following shall apply:

> We will settle covered losses to the dwelling under Coverage A without regard to the limit of liability shown in the Declarations.
>
> You agree to:
>
> **1.** insure the dwelling to 100% of its replacement cost as determined by us;
>
> **2.** accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;
>
> . . .

(Id. at 20-21) (emphasis added).

The General Conditions of the policy, mentioned above, state in relevant part,

> **GENERAL CONDITIONS**
>
> **5. Loss Settlement**. Covered property losses are settled as follows:
>
> > c. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
> >
> > > (1) We will pay the full cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:
> > >
> > > > (a) the limit of liability under this policy applying to the building;
>
> . . .

(Id. at 17-18.) In other words, if Rias wanted to insure her home for its full value, she could have elected to do so by paying an additional premium.

The declaration page for Rias's policy unambiguously stated the policy limits for the insurance she selected. (Id. at 3.) On the declaration page, the value of the dwelling was insured up to $162,000. (Id.) This amount <u>included</u> repair costs that stemmed from the need to follow a building ordinance or law. (See id.) Indeed, there is no separate limit or premium associated with the building ordinance

coverage.  (See id.)  Instead, the words "INCLUDED" are in bold face, and followed by the language "BUILDING ORDINANCE OR LAW COVERAGE." (Id.)  The letters "INCL" are in place of where the amount of the premium would be.  (Id.)  More to the point, the plain language of the building coverage endorsement stated that the coverage has now been "added to your policy," and that it is "now included in your coverage." (Id. at 5.)

Looking to the policy, there is no language indicating the Building Ordinance coverage section was meant to provide separate coverage.[3] When Safeco intended to provide additional coverage, the company required the payment of an additional premium for that coverage to apply.  Since Safeco did not charge an additional premium for the Building Ordinance coverage section, it is clear that this section did not provide additional coverage that would allow Rias to recover beyond the stated limits.  Taken as a whole, the policy unambiguously limits Rias's dwelling recovery to $162,000.  Since Rias can "recover no more than the applicable policy limits for [the] damage to [her] dwelling," and Safeco has paid this amount, summary judgment is appropriate. See Bardi v. Farmers Fire Ins. Co., 687 N.Y.S.2d 768, 771 (N.Y. App. Div. 1999); see also Bingham v. St. Paul Ins. Co., 503 So. 2d 1043, 1045 (La. Ct. App. 1987) (finding that an endorsement in the policy did not allow the plaintiff to recover an amount beyond the policy limits).

Rias argues that the court should adopt the parties' reasonable expectations for the application of the policy's provisions, which include the interpretation she argues for.  Niswonger v. Farm Bureau Town & Country Ins. Co., 992 S.W.2d 308 (Mo. Ct. App. 1999).  The court disagrees.  The "reasonable expectations" doctrine in Missouri contract law is to be cautiously applied.  Id. at 320-21.  This doctrine is not at all applicable in this case because the language of the insurance policy is unambiguous.

---

[3]In her deposition, Rias stated that no one from Safeco ever told her that she had a separate amount of coverage for code or building upgrades, beyond what was already covered by the dwelling policy limits. (Doc. 56, Ex. B at 33.)

**Count III**

In Count III of her complaint, Rias includes a claim for vexatious refusal to pay with respect to Count I and Count II. (Doc. 1 at 7.) During the hearing, both parties agreed that part of Count III would no longer be viable for Count II, if Count II were dismissed. Since summary judgment is granted to defendant on Count II, Count III is no longer viable with respect to Count II - though it remains viable with respect to Count I.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that motion of defendant Safeco Insurance Company of America for partial summary judgment (Doc. 54) is sustained. Count II of the plaintiff's complaint is dismissed with prejudice. The Count III claim for vexatious refusal to pay is also dismissed as it relates to Count II. What remain for litigation are Count I and Count III as it relates to Count I.

The trial setting having been previously vacated,

**IT IS FURTHER ORDERED** that a status and scheduling conference of the court with the parties is set for **Friday, February 20, 2009, at 2:00 p.m.**


    /S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 15, 2009.